## AFFIDAVIT IN SUPPORT OF
## CRIMINAL COMPLAINT

I, Jean C. Almonte, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I am a Special Agent with the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). I have been employed as a Special Agent since May 2023. I am an investigative or law enforcement officer of the United States empowered to conduct investigations and make arrests for offenses enumerated in Title 18, United States Code, Section 2516. My duties include conducting investigations involving the manufacture, distribution, and possession of controlled substances; the importation of controlled substances; smuggling of goods into the United States; firearms violations; immigration violations; and related offenses. I have successfully completed the Criminal Investigator Training Program (CITP) at the Federal Law Enforcement Training Center in Glynco, Georgia. I also graduated from the Homeland Security Investigations Special Agent Training (HSISAT). During HSISAT, I received extensive training conducting investigations related to firearms violations and narcotics smuggling, which includes interdiction and distribution activities where investigations commonly conducted are related to violations of Titles 8, 18, 19, 21 and 31 of the United States Code (USC).

2. I am presently assigned to the HSI San Juan Airport Investigations and Tactical Team (AirTAT). AirTAT investigates international drug trafficking and money laundering organizations that exploit the aviation domain to smuggle narcotics and illicit currency into and through the United States.

3. In my capacity as a Special Agent, my responsibilities include investigating violations of federal statutes such as: 21 U.S.C. § 841(a)(1) (possession with intent to distribute controlled substances); 21 U.S.C. § 952(a) (importation of controlled substances); 18 U.S.C. §

545 (smuggling of goods into the United States); Title 8 U.S.C. (immigration violations); and 46 U.S.C. § 70501 et seq. (possession with intent to distribute controlled substances aboard vessels subject to U.S. jurisdiction), among others.

4. The information contained in this affidavit is derived from my personal knowledge and observations, information relayed to me by other law enforcement officers, and my review of official records, documents, and physical evidence obtained during the course of this investigation. This affidavit does not include every fact known to me or the government but is limited to those facts necessary to establish probable cause. Specifically, this affidavit is submitted for the limited purpose of establishing probable cause that **Paola Angely VALENTIN-Rivera committed violations of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A)(ii)(II) (possession with intent to distribute a mixture or substance containing five kilograms or more of cocaine).** Therefore, it does not contain each and every fact known to me or other law enforcement agents concerning this investigation.

## Facts in Support of Probable Cause

5. On August 28, 2025, at approximately 11:00 p.m., Homeland Security Investigations (HSI) AirTAT Task Force Officers (TFOs) were conducting domestic flight operations at Luis Muñoz Marín International Airport (LMMIA), Carolina, Puerto Rico. Puerto Rico Police Bureau (PRPB) K-9 Officer Elvin A. Santiago Ortiz (Badge #32043) and his assigned narcotics detection dog, K-9 "Juci II," were assisting.

6. HSI TFOs received information regarding a female subject, later identified as Paola Angely VALENTIN-Rivera (hereafter "VALENTIN"), arriving at LMMIA at approximately 11:50 p.m. Surveillance video showed VALENTIN entering LMMIA through Door Entrance #1 and proceeding directly to the United Airlines counter, bypassing the United States Department of Agriculture (USDA) inspection checkpoint. Based on my training and experience, bypassing

USDA inspection checkpoints is a modus operandi frequently used by drug trafficking organizations to smuggle narcotics into the continental United States (CONUS). Drug traffickers using this modus operandi will often bring luggage to the airport without any controlled substances inside, pass through the agriculture screening point, and then leave the airport to put controlled substances in the luggage only to return later to go directly to check the luggage with the airline.

7.      Records indicated that VALENTIN was scheduled to travel on United Airlines flight UA 2219 to Newark Liberty International Airport (EWR), Newark, New Jersey. She was in possession of one backpack and two large checked-type suitcases: one black and one purple. HSI TFOs located the suitcases in the loading ramp area and coordinated a K-9 open-air odor test.

8.      At approximately 12:24 a.m. on August 29, 2025, K-9 Juci II alerted positively to the odor of narcotics on both suitcases, which bore United Airlines baggage tags reflecting Newark (EWR) as the destination. The tags listed the name "VALENTINRIVE." HSI TFOs secured both suitcases and transported them to Gate B10, where VALENTIN was located.

9.      At Gate B10, TFOs approached VALENTIN, identified themselves as law enforcement, and inquired about ownership of the suitcases. VALENTIN responded that both suitcases belonged to her. TFOs compared the baggage claim tags with VALENTIN's boarding pass and confirmed that both suitcases were checked under her name.

10.     TFOs requested consent to search the suitcases. VALENTIN verbally consented and voluntarily opened both suitcases. Upon opening, HSI personnel observed white brick-shaped objects wrapped in clear plastic. Based on my training and experience, the packaging was consistent with unlawfully concealed controlled substances.

11.     HSI SAs and TFOs conducted a full inspection of the black suitcase. Upon opening the suitcase, agents observed several articles of clothing concealing three large brick-shaped

objects wrapped in clear plastic film. After opening the three large brick shaped objects, a total of six smaller brick-shaped objects were recovered from inside. Based on my training and experience, the packaging and appearance were consistent with kilogram quantities of unlawfully concealed controlled substances.

12. HSI SAs and TFOs then conducted a full inspection of the purple suitcase. Upon opening the suitcase, agents observed several articles of clothing concealing three large brick-shaped objects wrapped in clear plastic film. A total of six brick-shaped objects were recovered. Based on my training and experience, the packaging and appearance were consistent with kilogram quantities of unlawfully concealed controlled substances

13. A chemical identification analysis was performed on two (2) brick-shaped objects from each suitcase. The analysis revealed that the brick-shaped objects contained cocaine hydrochloride. The seized bricks of cocaine obtained from the large black suitcase weighed approximately 6.84 kilograms. The seized bricks of cocaine obtained from the large purple suitcase weighed approximately 6.82 kilograms. The combined total weight of the seized cocaine was approximately 13.66 kilograms. Based on my training and experience, this quantity of narcotics is

THIS SPACE INTENTIONALLY LEFT BLANK

AFFIDAVIT CONTINUES ON FOLLOWING PAGE

not consistent with personal use, but rather with possession for distribution purposes.

I hereby declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

_____
Jean C. Almonte
Special Agent
Homeland Security Investigations
San Juan, Puerto Rico

Sworn and subscribed to me by phone in accordance with the requirements of FRCP 4.1 this 29th day of August 29 2025, in San Juan, Puerto Rico. at 11:33 am

_____
Giselle López-Soler
United States Magistrate Judge
District of Puerto Rico